UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**DANTE CORVETTE STONE**                                              **PLAINTIFF**

v.                                              **CIVIL ACTION NO. 5:23-CV-P139-JHM**

**THE GOOD OLD BOYS DOMESTIC TERRORISTS'**
**ORGANIZATION** *et al.*                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action.  This matter is before the Court for screening of the complaint (DN 1) pursuant to 28 U.S.C. § 1915A, on a motion to amend the complaint (DN 22), and on a second motion to amend the complaint and hold this case in abeyance (DN 30).  For the reasons set forth below, this action will be dismissed without prejudice with leave to amend and the motions to amend the complaint will be denied.

### I.  SUMMARY OF COMPLAINT

When Plaintiff Dante Corvette Stone initiated this action, in October 2023, he was incarcerated as a convicted prisoner at Kentucky State Penitentiary (KSP).  Plaintiff's allegations indicate that he was previously incarcerated at Eastern Kentucky Correctional Complex (EKCC).[1] Plaintiff lists the following as Defendants in the caption of the complaint form – "The Good Old Boys Domestic Terrorists' Organization," which Plaintiff refers to as the "G.O.B.D.T.O"; the "Commonwealth Executive Branch"; and the "KY D.O.C. Division," which the Court construes as the Kentucky Department of Corrections (KDOC).  Plaintiff lists the following as Defendants in the "Defendants" section of the complaint form and sues them in both their official and individual capacities – Kentucky Governor Andy Beshear, Kentucky Attorney General Daniel

---

[1] Since filing this action, Plaintiff has been transferred from KSP to another state prison, Green River Correctional Complex (DN 28).

Cambron,[2] KDOC Commissioner Cookie Crews, former KDOC Ombudsman John Dunn, KDOC Ombudsman Allyson Lambert,  KSP Warden Lauren Plappert, KSP Deputy Warden Bruce, KSP Unit Administrator Lauren Massey, KSP Unit Administrator Amy Fisher, KSP Special Services Coordinator Bradford Richie, KSP Internal Affairs Captain Berton Bare, KSP Sergeant Allyson Butts, KSP Captain Charles Roberts, KSP Lieutenant Spurlock, KSP Grievance Coordinator Allyson McAllister, KSP/Wellpath Coordinator Kristy Ponsetti-Carr, KSP/Wellpath Registered Nurse Karen Ramey, and KSP/Wellpath Nurse Stone.  The **Clerk of Court** is **DIRECTED** to **add as parties to this action all of the Defendants listed above**.[3]

The complaint consists of 50 handwritten pages which are often confusing and difficult to follow.  However, what is clear to the Court is that Plaintiff's allegations pertain to his state-court conviction and to his incarceration at both KSP and EKCC.  As relief, Plaintiff seeks compensatory and punitive damages and various forms of injunctive relief.

Plaintiff separates his complaint into individual allegations against each Defendant and then his allegations under various constitutional amendments.  The Court has organized this initial review in the same way so that it tracks with the complaint even though this means that there is some overlap between the two sections.

## II.  LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the

---

[2] The Court takes judicial notice that the actual name of the former Kentucky Attorney General is Daniel Cameron.
[3] By separate Memorandum and Order entered this date, the Court severed Defendants KDOC "Corrections Administrator" Alan Long, EKCC Warden Jason David Green, EKCC Deputy Warden Paul Crouch, and EKCC Lieutenant Zachary Parsons from this action and transferred Plaintiff's claims against them to the District Court for the Eastern District of Kentucky.

complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1),(2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Two elements are required to state a claim under § 1983.  *Gomez v. Toledo*, 446 U.S. 635 (1980).  "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### IV.  CLAIMS PLAINTIFF ORGANIZED BY DEFENDANT

#### A.  Good Ol' Boys Domestic Terrorists Organization

Although Plaintiff makes reference to the "G.O.B.D.T.O" throughout the complaint, he summarizes his claims against it as follows:

> [Plaintiff] has filed copious, over-abundant, and continual and constant correspondence of complaint reportings along with infoulable, indisputable face of record evidences in substantiation that the employees of various Kentucky Department of Corrections – Plantations have for years acted in a campaign to (1) prevent the [Plaintiff] form litigating to overturn his face-of-record over-substantiated wrongful life-sentence conviction (they're aware of this as the [Plaintiff] has presented infoulable evidences to plaintiff's slavers); and (2) to prevent the [Plaintiff] from exercising his First Amendment redress of grievances right to cease a completely arbitrary and constitutionally insurrective and treasonous reverse-penological purpose of exercising of departmental duties in the offices of [Defendants] [] Beshear, [] Crews, [] Cambron, et al. that [Defendant] [] Jordan, as former-Warden of Luther Luckett Correctional Complex, and current Warden of [KSP], and [Defendant] Green, as Warden of [EKCC] have allowed, acquiesced, promoted, engaged in the cover-ups of extended campaign of retaliation, intimidation, henderances, delayings, and preventions of government petition for redress centered around fraudulent and malicious mis-applications of the [KDOC] disciplinary and classifications processes, as well as administrative and institutional regulations to prevent the [Plaintiff] from 1) accessing the institutional grievance mechanism, 2) accessing the law library, 3) retaining and utilizing the legal materials necessary to effect the 1st, 5th, 6th, and 14th Amendment constitutional powers, and 4) from effectively communicating with applicable persons in furtherances of effecting constitutional rule of law in these

matters. – COMPLAINT FOCAL POINT: A series of face-of-record constitutionally violative and insurrective disciplinary violation reports as retaliation and prevention, in a campaign-style were used to substantiate a fraudulent classification of the [Plaintiff] into the hole at EKCC Plantation and KSP Plantation. . . .  Not to mention these matters are proven by record racially motivated and the G.O.B.D.T.O is presumed and alleged to be joined with Kentucky's own Imperial Klan Army of America, of I.K.A., this is sustained by the advent of efforts to hyper-perpetuate illegal mass slavery in the Commonwealth through fraud throughout the executive and judicial state branches, and the U.S. District Court of Kentucky. . . .

Although it is far from clear, based upon the above language, it appears that Plaintiff is using the label "G.O.B.D.T.O" to collectively refer to the Defendants in this action and to assert a civil conspiracy claim against them.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.  *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

The Court finds that Plaintiff's allegations suggesting a conspiracy between Defendants are non-specific, vague, and conclusory.  He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective.  Moreover, as set forth in the

remainder of the complaint, Plaintiff's allegations describe discrete occurrences involving Defendants and Plaintiff relies entirely on a highly attenuated inference of a conspiracy from the mere fact that each Defendant took allegedly adverse actions against him. Such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556-57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).

Accordingly, because Plaintiff does not allege any facts to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim and the must be dismissed for failure to state a claim upon which relief may be granted.[4]  Moreover, Plaintiff's claims against the "G.O.B.D.T.O." are frivolous because it is obviously not an actual entity subject to suit.

**B. "Commonwealth Executive Branch" and KDOC**

The KDOC is an agency within the Kentucky Justice and Public Safety Cabinet, which is part of the Executive Branch of the Commonwealth. *See* Ky. Rev. Stat. 12.015. A state and its agencies are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Additionally, the Eleventh Amendment acts as a bar to all claims for relief against the KDOC. A state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it.

---

[4] Because this Court finds that Plaintiff has failed to sufficiently allege a conspiracy between the KSP and EKCC Defendants, the Court entered a separate Order this date severing the EKCC Defendants from this action.

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-46 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-24 (1984); *Alabama v. Pugh*, 438 U.S. 78l, 781-82 (l978).  In enacting § l983, Congress did not intend to override the traditional sovereign immunity of the states.  *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (l979)).  "[T]he Eleventh Amendment is a true jurisdictional bar" to such claims.  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).  Thus, the Court will dismiss Plaintiff's claims against the "Commonwealth Executive Branch" and the KDOC for failure to state a claim upon which relief may be granted.

### C.  Official-Capacity Claims

#### 1.  State Defendants

Plaintiff sues all of the individual state Defendants in their official capacities.  When state officials are sued in their official capacities for damages, they are not "persons" subject to suit within the meaning of § 1983.  *Will,* 491 U.S. at 71 (concluding that a state, its agencies, and its officials sued in their official capacities for damages are not considered persons for the purpose of a § 1983 claim).  Moreover, state officials sued in their official capacities for damages are also absolutely immune from § 1983 liability under the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This Eleventh Amendment bar remains in effect when State officials are sued for damages in their official capacity.").

For these reasons, the Court will dismiss Plaintiff's official-capacity claims for damages for failure to state a claim upon which relief may be granted and for seeking damages from Defendants immune from such relief.

### 2. Wellpath Defendants

Plaintiff indicates that Defendants Ponsetti-Carr, Ramey, and Stone are employees of Wellpath. Thus, Plaintiff's official-capacity claims against these Defendants are actually against Wellpath. *See Kentucky v Graham*, 473 U.S. at 166 ("[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978))

The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as Wellpath, which presumably contracts with KDOC to provide medical services to inmates. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Thus, the liability of a contracted private entity must also be based on a policy or custom of the entity. *Street*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

Here, Plaintiff does not allege that any constitutional violation occurred as a result of a custom or policy of Wellpath. Moreover, as set forth below, the Court concludes that the complaint fails to show that Defendant Ponsetti-Carr, Ramey, or Stone violated his constitutional rights. Thus, Plaintiff's official-capacity claims against these Defendants will be dismissed for failure to state a claim upon which relief may be granted.

### D. Individual-Capacity Claims

#### 1. Defendant Cambron/Cameron

Plaintiff alleges that the former Attorney General of Kentucky, Defendant Cambron/Cameron is "single-handedly, personally liable for the Plaintiff's wrongful-conviction." The Court finds that this allegation is too conclusory and lacks "sufficient factual matter" to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

This claim also fails because it is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007). In *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."

Thus, because Plaintiff has not demonstrated that his conviction in the relevant action has been reversed on direct appeal, expunged by executive order, declared invalid by a statute tribunal, or called into question by the issuance of a writ of habeas corpus, the *Heck* doctrine also bars Plaintiff's claim against Defendant Cambron/Cameron.

### 2.    Defendants Beshear, Crews, White, Jordan, Dunn, and Bruce

Plaintiff alleges that these Defendants violated his constitutional rights when they failed to take any action, or at least sufficient action, in response to the various "reports" he sent to them. To the extent that Plaintiff does explain what these reports consisted of, the allegations are vague and sweeping, and fail to state a claim.

Moreover, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[P]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id*. at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Thus, because Plaintiff's claims against Defendants Beshear, Crews, White, Jordan, Dunn, and Bruce are not based on any active unconstitutional conduct, but rather a failure to act based upon Plaintiff's reports to them, the Court concludes that Plaintiff's individual-capacity claims against these Defendants must also be dismissed for failure to state a claim upon which relief may be granted.

### 3.    Defendants Lambert and McAllister

Plaintiff alleges that Defendant Lambert "was made abreast that K.S.P. has completely undermined the constitutional grievance process and wholly supports its as affirmed by her own

correspondence in response" and otherwise failed to act in response to one of Plaintiff's complaints.  With regard to Defendant McAlister, Plaintiff alleges:

> Defendant McAlister in her role as K.S.P. Grievance Coordinator has completely blockaded all of my literally all of Plaintiff's grievances, appx. 70 of them. McAlister's method include fraudulent claims that Plaintiff is grieving multiple incidents when he's highlighted a specific main topic. . . .  Another tactic is a totally absurd classification of dismissal that is another K.S.P. arbitrary custom, in which its designated that "no incident occurred" to Plaintiff. . . .  McAlister routinely rejects grievances that are timely filed as untimely filed. . . .

These claims fail because prisoners do not possess a constitutional right to a prison grievance procedure.  *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. Oct. 30, 2003) ("there is no inherent constitutional right to an effective grievance procedure") (citing cases).  For this reason, the denial of a grievance or the failure to act based upon information contained in a grievance fails to state a claim under § 1983.  *Gibbs v. Laughhunn*, No. 16-1771, 2017 U.S. App. LEXIS 13760, at *5 (6th Cir. Feb. 2, 2017); *see also LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding the plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective grievance procedure").

Thus, the Court will dismiss Plaintiff's claims against Defendants Lambert and McAllister for failure to state a claim upon which relief may be granted.

### 4.  Defendant Plappert

As stated above, Defendant Plappert is the KSP Warden.  Plaintiff makes the following allegations against her:

Plappert personally refused to allow Plaintiff adequate purchase of legal envelopes to timely mail-out court filings. . . . Plappert has instituted the pathetic allotments of 5 legal envelopes and 2 ink pens per week as a purchase limit which is inadequate in effecting Plaintiff's extensive litigation. . . . Plappert allows and promotes, in violation of the 14th Amend. upholding obligations to the Plaintiff's rights, the total usurping of the 1st Amend. obligated grievance process.

Furthermore, [she], acting as head-Warden, effected the retaliation to the Plaintiff's reporting that the dist. ct. dismissal of the id. Minton order mailed to plaintiff on May 17th, 2023, being withheld from Plaintiff until September 22, 2023. . . .

Plaintiff also alleges that Defendant Plappert interfered with an appeal he made to his "A.C.-T.U." classification.

### a. Denial of Access to the Courts

The Court first addresses Plaintiff's claims that Defendant Plappert is responsible for him receiving only 5 legal envelopes and 2 ink pens per week and for not allowing him to purchase additional legal envelopes.

The Court construes Plaintiff's claim to be one for denial of access to the courts. Prisoners have a constitutional right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977); *Lewis v. Casey*, 518 U.S. 343, 350 (1996). However, to state a viable claim for denial of access to the courts, a prisoner must demonstrate he suffered "actual injury" as a result of particular actions of prison officials. *Lewis*, 518 U.S. at 351. Actual injury requires a showing that a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim"). Indeed, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, Plaintiff does not link his alleged lack of access to a sufficient number of legal envelopes or ink pens to any specific legal injury. Thus, Plaintiff's claim that Defendant Plappert's actions regarding his access to legal resources resulted in him being denied meaningful access to the courts must be dismissed for failure to state a claim upon which relief may be granted.

### b. Retaliation

The Court next turns to Plaintiff's allegation that Defendant Plappert retaliated against him for reporting that his legal mail was held by prison officials for approximately four months. Plaintiff seems to allege that the retaliation consisted of only allowing Plaintiff "5 inches of paper work" and overseeing the "removal of his legal materials."

To state a First Amendment retaliation claim, a plaintiff must allege facts showing that (1) he engaged in protected conduct, (2) the defendants took an adverse action against him that would deter a person of ordinary firmness from engaging in the protected conduct, and (3) the defendants were motivated, at least in part, to take the adverse action because of the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam).

For purposes of this initial review only, the Court will assume that Plaintiff has satisfied the first and second prongs of the above standard. That is, the Court will assume that making a complaint to Defendant Plappert about his allegedly held legal mail constitutes protected conduct and that the removal of legal materials from his cell constitutes an adverse action. Plaintiff, however, fails to satisfy the third prong of the standard. "[R]etaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).   A plaintiff may rely on circumstantial evidence, but must still provide "specific, nonconclusory allegations" linking his conduct to a defendant's retaliatory act.  *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts'" will not suffice. *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (requiring "concrete and relevant particulars").   A plaintiff may allege a chronology of events from which a defendant's retaliatory animus could reasonably be inferred. *Manning v. Bolden*, 25 F. App'x 269, 272 (6th Cir. 2001) (citations omitted).  Other evidence courts examine to determine causation include statements by defendants or the disparate treatment of other prisoners.  *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010); *see also Patterson v. Godward*, 370 F. App'x 608, 610 (6th Cir. 2010). Here, the complaint does not contain allegations of temporal proximity or disparate treatment. Plaintiff has only provided conclusory allegations of retaliatory motive and has not provided any evidence - direct or circumstantial - in support.   "By 'merely alleg[ing] the ultimate fact of retaliation,' Plaintiff's argument for causation, and thus for actionable retaliation, fails." *Flournoy v. Hemingway*, No. 20-13130, 2021 U.S. Dist. LEXIS 93709, at *22 (E.D. Mich. May 18, 2021) (quoting *Murray*, 84 F. App'x at 556).

Thus, the Court will dismiss Plaintiff's retaliation claim against Defendant Plappert for failure to state a claim upon which relief may be granted.

### c.  Grievance Process

As to Plaintiff's allegation that Defendant Plappert allowed "the total usurping" of the grievance process at KSP, this claim fails because, as set forth above, prisoners do not possess a

constitutional right to a prison grievance procedure. Thus, this claim must be dismissed for failure to state a claim upon which relief may be granted.

### d.  Interference with Classification

The next addresses Plaintiff's allegation that Defendant Plappert interfered with an appeal he was making to the "A.C.-T.U." classification he received while incarcerated at EKCC. The Court construes this allegation as a claim brought under the Due Process Clause of the Fourteenth Amendment. The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).[5] Thus, the Court will dismiss this claim against Defendant Plappert for failure to state a claim upon which relief may be granted.

### 5.  Defendant Fisher

As to Defendant Fisher, Plaintiff alleges that she violated his constitutional rights by "contributing to the refusal of the double cuff order" and because she was involved in his "A.C.-T.U." classification. He specifically states that his continued "A.C.-T.U." classification at KSP has resulted in him "spending time in the hole."

### a.  "Double-Cuff" Order

As to the first claim regarding the refusal and/or denial of a "double-cuff" order, although Plaintiff makes this allegation against various Defendants, the Court cannot discern what a

---

[5] Alternatively, to the extent that Plaintiff is actually challenging his ability to appeal the outcome of a disciplinary proceeding at EKCC, this claim fails because a prisoner "simply has no due process right to an appeal of a disciplinary conviction." *Christian v. Gluch*, No. 90-1348, 1990 U.S. App. LEXIS 20454, at *2 (6th Cir. Nov. 20, 1990); *Boles v. Weist*, No. 87-1862, 1988 U.S. App. LEXIS 7942, at *2 (6th Cir. June 10, 1998); *see also Lowe v. Sockey*, 36 F. App'x 353 (10th Cir. 2002) ("[T]he Supreme Court has already determined that there simply exists no due process right to such an appeal.") (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974)); *McCain v. Jackson*, No. 1:19-cv-234, 2019 U.S. Dist. LEXIS 209075 (S.D. Ohio Aug. 5, 2019); *Stanley v. Houle*, No. 1:20-cv-100, 2020 U.S. Dist. LEXIS 48377 (W.D. Mich. Mar. 20, 2020); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 470 (E.D. Pa. 2007).

"double-cuff" order is based upon Plaintiff's allegations or how the denial of such may have violated Plaintiff's constitutional rights. Thus, the Court finds that this claim must be dismissed because it lacks "sufficient factual matter" to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

### b. "A.C.-T.U." Classification/Segregation

As to the second claim, as set forth above, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody,* 429 U.S. at 88 n.9. And to the extent that Plaintiff alleges he spent time in the "hole" at KSP because of this classification, his complaint pertains to events that occurred at KSP from March 2023 until September 2023, which means that he could have only spent approximately six months in segregation there before he initiated this action.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due

process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest at stake because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim*, 461 U.S. at 250.

Plaintiff's allegations do not support an inference that the duration of his sentence has been affected by his placement in segregation. And even if Plaintiff was in segregation at KSP for the entire time period pertinent to the complaint (six months), this length of time is far short of the years-long placements that are deemed atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *see also Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999) (holding that 101 days in SHU confinement, though unpleasant and severe, was not atypical and significant); *Jenkins v. Murray*, 352 F. App'x 608, 610 (3d Cir. 2009) (holding that prisoner's three-month confinement in administrative segregation did not constitute an atypical or significant hardship); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (holding that

a six-month in administrative segregation was not atypical and significant); *Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008) (holding that 12 months in administrative lockdown was not atypical and significant); *Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996) (holding that placement of inmate in non-disciplinary segregation for three months did not create a liberty interest); *Ballinger v. Cedar Cnty. Mo.*, 810 F.3d 557, 563 (8th Cir. 2016) (holding that whether the duration in administrative segregation was three months, as the district court found, or one year, as the prisoner argued, it was not an atypical and significant hardship); *Shields v. Cline*, 829 F. App'x 321, 324 (10th Cir. 2020) (concluding that five months in administrative segregation was not atypical and significant).

Thus, in light of this jurisprudence, even if Plaintiff is alleging that he spent six months in the "hole" at KSP as a result of his "A.C.-T.U." classification, he still fails to state a due process claim under the Fourteenth Amendment.

### 6. Defendant Massey

Plaintiff alleges that Defendant Massey oversaw "the denial of the double-cuff order resulting in the injuries of Plaintiff" and that he "was also acting specials services coordinator when A.C-T.U. was weaponized as a tool of constitutional insurrection." Plaintiff states that she specifically told him that "she would do absolutely nothing to correct his unlawful assignment to A.C.-T.U. and that Plaintiff would have to 'file a lawsuit.'" Plaintiff further alleges that Defendant Massey was the "individual who trained [Defendant] McAllister in the art of voiding the institutional grievance process."

To the extent they are comprehensible, Plaintiff's allegations against Defendant Massey seem to be that she failed to act or to reverse decisions made by others. As stated above, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions

to impute liability onto supervisors. *See, e.g.*, *Monell*, 436 U.S. at 691. Indeed, "[p]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter*, 532 F.3d at 575. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id*. at 576. Moreover, as stated above, Plaintiff has failed to state a claim with regard to his "double-cuff" claim, "A.C.-T.U." classification claim, and grievance-related claims.

Thus, the Court will dismiss Plaintiff's claims against Defendant Massey for failure to state a claim upon which relief may be granted.

### 7. Defendants Richie and Spurlock

Plaintiff alleges that Defendant Richie denied him access to his "legal materials" from March 2023 to July 2023, including access to his "discovery disc." Plaintiff further alleges that Defendant Richie is "culpable in the double-cuff injuries." Plaintiff also alleges that Defendant Richie was involved in issuing Plaintiff a "felonious disciplinary report for reading the overview of [a federal court opinion] in a group therapy session to inform the group that residents had rights." Plaintiff further alleges that Defendant Richie used the false disciplinary report "to expel the Plaintiff from the T.U. program at the cusp of the final six weeks phase. Meaning after amassing of 6 months clear time . . . Plaintiff will have to restart the 4-six weeks phase over from the beginning . . . ." Plaintiff similarly alleges that Defendant Spurlock wrongfully issued him a "non-violent demonstration disciplinary violation" for reading case law in a group meeting in response to one of his group-mates "asserting that K.D.O.C. residents have no rights under law."

### a. Denial of Access to Legal Materials

The Court set forth above the case law pertinent to a claim for denial of access to the courts. In light thereof, and because Plaintiff fails to allege that Defendant Richie's actions caused him

any specific legal injury, this claim must be dismissed for failure to state a claim upon which relief may be granted.

### b. "Double-Cuff" Injuries

Plaintiff's allegation against Defendant Richie is that he is "culpable in the double-cuff injuries." As stated above, the Court finds that this claim must be dismissed because it lacks "sufficient factual matter" to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

### c. Disciplinary Reports

As set forth above, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S.at 486-87. Plaintiff's allegations do not show that Defendant Richie's disciplinary reports resulted in either of these injuries. Thus, Plaintiff fails to state a due process claim against Defendant Richie.

### 8. Defendant Roberts

Plaintiff alleges that Defendant Roberts wrongfully convicted him of three disciplinary charges because he was "overtly prejudice and bias[ed]" toward Plaintiff and that the proceedings he oversaw pertaining to these three convictions failed to provide Plaintiff with adequate due process.

Plaintiff does not indicate what sanctions he received as a result of the three disciplinary convictions by Defendant Roberts. Thus, because he makes no allegations indicating that these convictions resulted in sanctions that "will inevitably affect the duration of his sentence" or imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents

of prison life," the Court finds that he has failed to state a Fourteenth Amendment due-process claim against Defendant Roberts and will dismiss the claim for failure to state a claim upon which relief may be granted.

### 9. Defendant Bare

Plaintiff alleges as follows with regard to Defendant Bare:

[H]e is responsible for the May 14, 2023, "most supremely untenable dismissal in the § 1983 action of id., Minton, being withheld for over four (4) months until September 22, 2023. . . . [That] § 1983 action is not only an entirely face-of-record accounting how the judiciary of Kentucky and U.S. District Court of Kentucky along with the Commonwealth of Kentucky executive branch are industrializing, through misuses of their offices, the force conditioning of minority, disenfranchised, and other at-risk demographics of the citizenry. . . .

The added emphasis in the judicial undermining is the record in recent final order issued by U.S.C.O.A. denying the Plaintiff's expedited order of decision under mandamus relief regarding the § 2254 petition which is related to the matters discussed herein preventing the Plaintiff from following 28 U.S.C. § 1291 and 28 U.S.C. § 2254 to bring matters before the United States Supreme Court. . . .

[Defendant] Bare retaliated against [me] by removing every piece of legal material from the Plaintiff's cell to prevent his constitutional rights exercises in these matters. The Plaintiff, 5 days later, still hasn't received 5 inches of legal material and had to borrow this ink pen he is currently writing with from another resident . . . .

Although these allegations are difficult to follow, the Court construes them as asserting claims for interference with Plaintiff's legal mail and three claims for denial of access to the courts.

### a. Interference with Legal Mail

Plaintiff alleges that Defendant Bare held one piece of legal mail – the dismissal order discussed below. An isolated incident of mail tampering does not rise to the level of a constitutional violation. *See, e.g.*, *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003) ("While a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must

show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'") (citation omitted); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("[A] random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."); *Washington v. Wilkins*, No. 3:16CV-P555-CRS, 2017 U.S. Dist. LEXIS 16754, at *5 (W.D. Ky. Feb. 7, 2017) ("Plaintiff does not allege routine opening or interference with his mail and, therefore, fails to state a claim of constitutional proportions."); *Lloyd v. Herrington*, No. 4:11CV-P128-M, 2011 U.S. Dist. LEXIS 138728, at *4-5 (W.D. Ky. Dec. 2, 2011) ("Even if the Court interprets Plaintiff's complaint as alleging two instances of interference with his mail-one of the outgoing motion and one of his incoming piece of legal mail-the Court still finds that the two incidences taken together do not rise to a constitutional violation."); *Rinehart v. Beck*, No. 5:09-CT-3019-D, 2011 U.S. Dist. LEXIS 1037, at *16 (E.D.N.C. Jan. 5, 2011) ("Isolated incidents of mail mishandling do not rise to the level of a constitutional violation.").

Thus, because Plaintiff's allegation against Defendant Bare pertains to only one piece of legal mail, the Court finds it is not sufficient to state a First Amendment legal mail claim and will dismiss this claim for failure to state a claim upon which relief may be granted.

### b. First Denial of Access to the Courts

Although the Court has above set forth the standard of a claim of denial of access to the courts, the Court will restate it here for clarity's sake. Prisoners have a constitutional right of meaningful access to the courts. *Bounds,* 430 U.S. at 817; *Lewis,* 518 U.S. at 350. However, to state a viable claim for denial of access to the courts, a prisoner must demonstrate that he suffered "actual injury" as a result of particular actions of prison officials. *Lewis*, 518 U.S. at 351. Actual injury requires a showing that a meritorious claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id*. at 356; *Pilgrim*, 92 F.3d at 416

(6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim"). Indeed, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher,* 536 U.S. at 415.

Although not clearly set forth in the above allegations, in a separate part of the 50-page complaint, Plaintiff alleges that the holding of the dismissal order in "*Minton*" caused him to "procedurally default" in that action. The Court's records show that Plaintiff has filed ten actions in this Court and that one is captioned, *Stone v. Minton*, No. 3:22-cv-00643-JHM. In that action, Plaintiff sued Kentucky Supreme Court Chief Justice John D. Minton, "(Unknown Ky. Sup. Ct. Justices)," and his public defender and her supervisor at the Department of Public Advocacy. In the complaint, Plaintiff accused those defendants of being part of the G.O.B.D.T.O and engaging in "domestic terrorism" in relation to his state-court criminal conviction. Therein, Plaintiff alleged that "The G.O.B.D.T.O is effectively violating, kidnapping, attempted murder, complicity, to murder, intimidating witnesses in the legal process, perjury, official misconduct, (AEDPA), liability for conduct of another; complicity, R.I.C.O., tampering with physical evidence, human trafficking, judicial disqualifications, witness retaliation, embezzlement, assault, sexual assault, and more" and requested that the Defendants "be both civilly and criminally prosecuted." (DN 25). The docket sheet in that case shows that it was dismissed on May 17, 2023, pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from a defendant who is immune from such relief (DNs 25 & 26). In its Memorandum Opinion and Order entered on that date, the Court

additionally noted that it lacked jurisdiction over a large portion of the complaint because the allegations were "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, [and] no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). And in its Order of Dismissal, the Court certified that "an appeal of this action would be frivolous and would not be taken in good faith." (DN 26).

The record in that case shows that Plaintiff filed a motion for reconsideration of the Memorandum Opinion and Order of Dismissal which the Court denied (DN 42). The record also shows that Plaintiff filed a motion for an extension of time to file a notice of appeal which the Court denied. (*Id.*) The Sixth Circuit then dismissed his appeal for lack of jurisdiction because it was not timely filed (DNs 38 & 49). However, Plaintiff also appealed this Court's ruling denying his motion for an extension of time to file the appeal. The docket sheet reflects that this appeal was dismissed for lack of prosecution after Plaintiff failed to pay the filing fee (DN 56).

Upon consideration, the Court concludes that Plaintiff has failed to state a claim for denial of access to the Courts because although Plaintiff seems to allege that Defendant Bare's actions caused him to forfeit his right to appeal the Court's dismissal of the action in *Minton*, the record from that case establishes that none of his claims were meritorious. The record also reflects that Plaintiff was able to file an appeal of the Court's order denying him an extension of time to file the appeal and that this appeal was dismissed, not because of any injury caused by Defendant Bare, but for lack of prosecution based on Plaintiff's failure to pay the filing fee.

Thus, the Court will dismiss Plaintiff's claim against Defendant Bare for denial of access to the courts for failure to state a claim upon which relief may be granted.

### c. Second Denial of Access to the Courts

Plaintiff also seems to assert that Defendant Bare's actions caused him legal injury in a § 2254 habeas corpus action. The Court cannot discern Plaintiff's allegations in regard to this claim. Thus, the Court finds that it must be dismissed because it lacks "sufficient factual matter" to state a claim upon which relief may be granted *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

### d. Third Denial of Access to the Courts

Finally, the Court turns to Plaintiff's allegation that Defendant Bare removed legal materials from Plaintiff's cell for five days or more to "prevent his constitutional rights exercises in these matters." Although Plaintiff labels these actions as retaliation, because Plaintiff seeming alleges that Defendant Bare removed the materials to prevent him from accessing the courts, and not to punish Plaintiff for engaging in past action, the claim is actually more properly construed as a claim for denial of access to the courts.

This claim also fails because Plaintiff does not allege that Defendant Bare's removal of legal materials from his cell actually caused Plaintiff injury in any of the cases he is pursuing. Thus, the Court will also dismiss this claim for failure to state a claim upon which relief may be granted.

### 10. Defendant Butts

As to Defendant Butts, Plaintiff only states "id. to Bare." The Court construes this as meaning that Defendant Butts engaged in the same conduct as Defendant Bare. Thus, because the Court has found that Plaintiff has failed to state a claim against Defendant Bare, the Court likewise finds that he has failed to state a claim against Defendant Butts and will dismiss Plaintiff's claims against her for failure to state a claim a claim upon relief may be granted.

### 11. Defendant Ponsetti-Carr

Plaintiff states that Defendant Ponsetti-Carr is the KSP/Wellpath Health Services Administrator.  Plaintiff alleges that she denied him "several prescriptions related to severe stomach issues that contribute to prolonged inabilities to defecate properly," a "mineral oil supplement prescription for chronic nail-cutical  infection," and a prescription to fight dry scalp issues.  Plaintiff further asserts that she denied the extraction of an impacted tooth which caused him to suffer infections in his gums and sinus cavity and that "the repeated need to take anti-biotics . . . resulted in a nearly deadly penicillin overdose/adverse reaction."

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id*. at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id*.  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*.  The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at

837. Moreover, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The Court finds that Plaintiff has failed to satisfy the objective component of the above standard as to his claims regarding his digestive issues because he has not alleged sufficient factual matter to show that any failure to treat these conditions put him at him at substantial risk of serious harm. *See, e.g.*, *Stanfield v. Thompson*, No. 4:12CV-P54-M, 2013 U.S. Dist. LEXIS 32227, at *29 (W.D. Ky. Mar. 8, 2013) (finding that plaintiff's complaints of constipation did not rise to a serious medical need when there is no indication that the constipation caused any harm to plaintiff other than some minor pain and discomfort); *Williams v. Mustafa*, No. 08-10197, 2009 U.S. Dist. LEXIS

14483, at *12 (E.D. Mich. Feb. 24, 2009) (holding that plaintiff's allegations that he suffered from stomach pains and chronic constipation do not rise to the level of a medical need); *Moy v. Evans*, No. 06-272-GPM, 2007 U.S. Dist. LEXIS 6843, at *6 (S.D. Ill. Jan. 31, 2007) (finding that plaintiff did not demonstrate a serious medical need when he complained of constipation and accompanying pain, but did not offer any information regarding a diagnosis or condition); *cf. Spar v. Mohr*, No. 2:14-cv-546, 2015 U.S. Dist. LEXIS 138287, at *22-23 (S.D. Ohio Oct. 9, 2015) (collecting cases and concluding that plaintiff's chronic constipation, which caused severe abdominal pain, chills, and vomiting, constituted a serious medical need); *Bourgoin v. Weir*, No. 3:10cv391 (JBA), 2011 U.S. Dist. LEXIS 108778, at *18-19 (D. Conn. Sept. 23, 2011) (concluding on summary judgment that reasonable jurors could find that the plaintiff suffered from an objectively serious medical condition when he had chronic constipation and his records reflected severe abdominal pain, fecal blockage, and significant weight loss).

Plaintiff has likewise failed to allege sufficient factual matter to show that the failure to treat his dry scalp or nail infections put him at substantial risk of serious harm. Thus, he has failed to satisfy the objective component of the above standard as to these conditions as well.

The Court next turns to Plaintiff's allegation that he had an impacted tooth which caused him to have gum and sinus infections and that Defendant Ponsetti-Carr acted with deliberate indifference when she refused to remove his impacted tooth. Even if the Court assumes that an impacted tooth constitutes a serious medical need, the Court finds that this claim fails as to the subjective component because although Plaintiff alleges that Defendant Ponsetti-Carr did not provide the treatment he sought, extraction of the tooth, Plaintiff does not allege that she denied him treatment for this condition. Indeed, he indicates that she consistently prescribed antibiotics and penicillin to treat the gum and sinus infections that were purportedly caused by the impacted

tooth.  Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference.  *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996).  Thus, the Court concludes that Plaintiff's allegations fail to show that Defendant Ponsetti-Carr was deliberately indifferent to his impacted tooth and related infections.

Finally, although Plaintiff alleges that he suffered a nearly fatal adverse reaction to the penicillin he was prescribed, this too fails to show deliberate indifference. "Allegations that a prisoner experienced unanticipated side effects from a prescribed medication, without more, do not give rise to an Eighth Amendment violation for deliberate indifference to serious medical needs." *Reed v. Craig*, No. 1:11-cv-719, 2011 U.S. Dist. LEXIS 123434, at *9 (S.D. Ohio Oct. 25, 2011), *report and recommendation adopted by* 2011 U.S. Dist. LEXIS 148569 (S.D. Ohio Dec. 21, 2011); *see also Ealey v. Tetirick*, No. 2:14-cv-194, 2014 U.S. Dist. LEXIS 161240, at *7 (W.D. Mich. Nov. 18, 2014) (finding no deliberate indifference after a prison doctor prescribed a medication which caused unwanted side effects because there was "no indication that [the doctor] knew that [the prisoner] would suffer an adverse reaction to the medication"); *Hall v. Nurse*, No. 1:09-cv-381, 2009 U.S. Dist. LEXIS 68660 (S.D. Ohio July 23, 2009) (holding that although the plaintiff alleged that he suffered adverse side effects from a prescription medication this showed at most negligence because the prisoner did not allege that the defendants knew plaintiff would suffer an adverse reaction from the medication) (collecting cases).

Thus, the Court will dismiss Plaintiff's Eighth Amendment claims for deliberate indifference to a serious need against Defendant Ponsetti-Carr for failure to state a claim upon which relief may be granted.

### 12. Defendant Ramey

Plaintiff alleges that Defendant Ramey is the "primary respondent of the mass of the Plaintiff's Medical Contact Forms which serve as a follow-up to Healthcare Request Forms and treatments." He states, "[i]n short, [she] as aid and contributed to the same acts aforementioned by attributed to [Defendant] Ponsetti-Carr." Because the Court has above concluded that Plaintiff failed to state a claim against Defendant Ponsetti-Carr, the Court likewise concludes that he has failed to state a claim against Defendant Ramey. Thus, Plaintiff's claims against Defendant Ramey will also be dismissed for failure to state a claim upon which relief may be granted.

### 13. Defendant Stone

Plaintiff alleges that Defendant Stone "set on the dorm 3 treatment team as a medical advisor when the Plaintiff's double-cuff was 'officially' brought up and denied." Again, and as explained above, the Court can discern no constitutional claim based on Plaintiff's allegations regarding the denial of a "double-cuff" order. The claim lacks "sufficient factual matter" to state a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Thus, Plaintiff's claim against Defendant Stone will also be dismissed for failure to state a claim upon which relief may be granted.

## V.  CLAIMS PLAINTIFF ORGANIZED BY CONSTITUTIONAL AMENDMENT

### A.  First Amendment

Plaintiff alleges that his rights were violated under the First Amendment because he was denied the ability to freely exercise his religion and because his freedom of speech has been curtailed by KSP because his grievances have been "systematically denied or otherwise thwarted." Plaintiff states that he has filed 100 grievances since his transfer to KSP and that "not a single one has been processed through the grievance mechanism."

### 1. Religion

"Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). A violation of the First Amendment requires the imposition of a "substantial burden" on a plaintiff's exercise of his religion. *Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015). Similarly, the Religious Land Use and Institutionalized Persons Act (RLUIPA) prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]" 42 U.S.C. § 2000cc-1(a).

Here, Plaintiff does not identify his religion or provide anything other than conclusory allegations regarding this claim. Thus, the Court finds that Plaintiff's allegations lack "sufficient factual matter" to state either a First Amendment free-exercise claim or a RLUIPA claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. These claims will therefore be dismissed for failure to state a claim upon which relief may be granted.

### 2. Grievance Process

This claim must be dismissed because as explained above, prisoners have no constitutional right to an effective grievance procedure.

### B. Fourth Amendment

Plaintiff alleges that Defendants have "stolen/robbed" him of $2,700 of his personal property and "up to $1,000 of legal research has been discarded." He also seems to allege that Defendants have taken the following from his cell and "destroyed without compensation" - "copious correspondences with both liable and supporting governmental officials, entrepreneurial endeavors including several books slated for submission to be publish; 30 sum-odd inventions

31

slated for submission to be licensed, business plans with resources, [and] four (4) non-profit schematics. . . ."

The Fourth Amendment ensures, in relevant part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . but upon probable cause . . . ." U.S. Const. amend. IV. Prisoners, however, "do not have a Fourth Amendment right to be free from the seizure of their personal property." *Marceleno v. Cal. Dep't of Corr. & Rehab*, 1:17-cv-01136-LJO-GSA-PC, 2019 U.S. Dist. LEXIS 85641, at *11 (E.D. Cal. May 21, 2019) (citing *Hudson v. Palmer*, 468 U.S. at 536); *see also Morgan v. Wetzel*, No. 20-2881-KSM, 2020 U.S. Dist. LEXIS 240146, at *9 (E.D. Pa. Dec. 21, 2020) (("The protections of the Fourth Amendment regarding personal property do not apply in the prison context.") (citing *Hudson v. Palmer*, 468 U.S. at 538) (O'Connor, concurring) ("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects.")).

Thus, the Court will dismiss Plaintiff's Fourth Amendment claims for failure to state a claim upon which relief may be granted.[6]

---

[6] Plaintiff's allegations regarding the destruction of his personal property could be construed as a Fourteenth Amendment claim. However, the Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Thus, to state a constitutional claim for the deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt*, 451 U.S. at 543-44; *see also Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983) (holding that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate"). The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Thus, Plaintiff's allegations concerning the destruction of his personal property also fail to state a Fourteenth Amendment claim.

### C.  Fifth Amendment

Plaintiff alleges that Defendants violated his Fifth Amendment rights when they failed to provide him adequate due process regarding his "grievance, disciplinary, and classification issues" as well as their "embezzlement" of his funds.  Because the Fifth Amendment's Due Process Clause "circumscribes only the actions of the federal government," *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000), Plaintiff's Fifth Amendment claims must be dismissed for failure to state a claim upon which relief may be granted.  Moreover, the Court analyzes Plaintiff's "Fifth Amendment" allegations under the appropriate amendments in other sections of this Memorandum Opinion and Order.

### D. Sixth Amendment

Plaintiff alleges that his Sixth Amendment rights were violated because Defendants did not provide the due process procedures guaranteed by the Sixth Amendment to any of his disciplinary proceedings.  However, to the extent that a prisoner is entitled to due process protections in a disciplinary proceeding, these protections stem from the Fourteenth Amendment, and not the Sixth Amendment, which provides due process protections for criminal defendants only.  *See, e.g.*, *Lapine v. Moore*, No. 24-1146, 2024 U.S. App. LEXIS 15575, at *6 (6th Cir. June 26, 2024) (citing *Wolff*, 418 U.S. at 556).  Thus, this claim will also be dismissed for failure to state a claim upon which relief may be granted.

### E. Eighth Amendment

#### 1.  Excessive Force

Plaintiff alleges that a KSP officer sprayed him with "OC spray" when Plaintiff "refused to move back into a gang-war-zone, feces-war-zone cell assignment."  The Court construes this

allegation to mean that a KSP officer sprayed him with OC spray after he refused the officer's order to go back into his cell.

The Eighth Amendment prohibits the use of excessive force against inmates held in a correctional facility. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). An inmate who brings an excessive use of force claim must show the officer "acted with a sufficiently culpable state of mind, and the alleged wrongdoing must be objectively harmful enough to establish a constitutional violation, [and] that the defendant acted 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. at 6).

The Sixth Circuit has "repeatedly described the use of a taser or pepper spray as a proportional level of force in response to a prisoner's refusal to follow orders . . . ." *Johnson v. Scootsman*, 79 F.4th 608 (6th Cir. 2023) (citing *Sams v. Quinn*, No. 17-1419, 2017 U.S. App. LEXIS 20558, at *6-7 (6th Cir. Sept. 7, 2017) (refusing an order to accompany an officer to the infirmary); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (refusing an order to "exit the shower"); *see also Davis v. Agosto*, 89 F. App'x 523, 526 (6th Cir. 2004) (refusing an order to present hands for handcuffing); *Siggers v. Renner*, 37 F. App'x 138, 140 (6th Cir. 2002) (refusing an order to leave strip cage).

In light of this jurisprudence, the Court concludes that Plaintiff's allegations fail to show that a KSP officer used excessive force against him when he sprayed Plaintiff with OC spray after Plaintiff failed to comply with a direct order. Thus, this claim will also be dismissed for failure to state a claim upon which relief may be granted.

### 2. Conditions of Confinement

The Court next turns to Plaintiff's allegations regarding the conditions of the cell and/or cellhouse where he was incarcerated at KSP. Plaintiff alleges that his cell was so cold that it had icicles and frost in it; that his cellhouse was polluted with carbon and that he suffers from carbon poisoning which has caused him to have headaches, shortness of breath, chest pains, low blood pressure, heavy drowsiness, and extreme light-headedness causing him to "pass out several times"; that his cellhouse was "wholly contaminated with sewage . . . seeping through the ceilings and dripping directly onto the Plaintiff . . . . and destroying his [personal property]; and that there was a massive rodent and insect infestation in his cellhouse.

The Eighth Amendment's prohibition against cruel and unusual punishment applies to inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834, 825 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. at 517). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Instead, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. at 9.

An Eighth Amendment conditions-of-confinement claim has an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To state a conditions-of-confinement claim pursuant to the Eighth Amendment, a plaintiff must allege (1) a deprivation that is objectively "sufficiently serious," for example, that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," (the objective component) and (2) that the defendant

prison official has a "sufficiently culpable state of mind," specifically one of "deliberate indifference" to inmate health or safety (the subjective component)." *Farmer*, 511 U.S. at 834 (citations and internal quotations omitted).

For purposes of this initial review, the Court will assume that Plaintiff has set forth conditions of confinement which satisfy the objective prong of the above standard. However, Plaintiff has failed to identify any Defendant or other KSP officer who knew about these *specific conditions* and acted with deliberate indifference towards Plaintiff concerning them. Thus, because Plaintiff's allegations do not satisfy the subjective prong of the above standard, the Court concludes that Plaintiff's Eighth Amendment conditions-of-confinement claims must be dismissed for failure to state a claim upon which relief may be granted. However, the Court will dismiss the claims without prejudice and with leave to amend the complaint to identify and name as Defendants the KSP officers who knew about these specific conditions-of-confinement and were deliberate indifferent to them. *See Rashada v. Fiegel*, No. 23-1674, 2024 U.S. App. LEXIS 7883, at *12 (6th Cir. Apr. 1, 2024) (approving dismissal of *pro se* complaint without prejudice and with leave to amend).

### F. Fourteenth Amendment

The Court has addressed above the Fourteenth Amendment claims Plaintiff has made against individual Defendants. In this section of the complaint, he states as follows with regard to the Fourteenth Amendment:

> The Defendants use the K.D.O.C. to overthrow the United States Constitution. . . . Those involved are not solely domestic terrorists, but treasonists and insurrectionists. . . . [T]he focal point of this action is the mass of fraudulent governmental documentations and processes used to harm and attempt to murder the Plaintiff . . . [who] is [going] to reinstitute rule of Constitutional law over the Commonwealth of Kentucky [which] is the nightmare of G.O.B.D.T.O. insurrectionists as they will no longer be able to falsely-contrive and hyper-

perpetuate a system of illegal mass slavery in order to spread misanthropic hate
. . . and exploit and terrorize the masses of society.

The Court can discern no Fourteenth Amendment claim within these broad and sweeping allegations. Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

## VI. INJUNCTIVE RELIEF

Plaintiff seeks multitudinous forms of injunctive relief in the complaint. Injunctive relief is a remedy, not a separate cause of action. Thus, because the Court has concluded there is no viable underlying claim, Plaintiff's requests for injunctive relief fail. *See Brown v. Fentress*, No. 3:18-CV-P120, 2018 U.S. Dist. LEXIS 70007, *6 (W.D. Ky. April 26, 2018) ("A plaintiff 'cannot seek such equitable relief where there is no underlying federal claim.'") (quoting *Williams v. Warner*, No. 3:15-CV-05655-BHS-JRC, 2017 U.S. Dist. LEXIS 67738, at *23 (W.D. Wash. Apr. 3, 2017); *see also Burd v. Countrywide Home Loans, Inc*., No. 2:15-cv-1764-GMN-VCF, 2015 U.S. Dist. LEXIS 163669, at *9 (D.C. Nev. Nov. 10, 2015) ("Injunctive relief is not a separate cause of action or an independent ground for relief.").[7]

## VII. PENDING MOTIONS

Since Plaintiff filed the complaint, he has filed two motions for leave to amend the complaint. In the first motion (DN 22), Plaintiff requests leave to amend the complaint to name as Defendants the "successors" of some of the original Defendants. Because this action is being dismissed without prejudice to Plaintiff filing a very specific amended complaint regarding Plaintiff's conditions of confinement at KSP, there is no need for any "successor" to be named as a Defendant. Thus, the Court will deny this motion.

---

[7] The Court additionally observes that requests for injunctive relief are usually denied as moot once a prisoner has been transferred to another correctional facility. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

In the second motion (DN 30), Plaintiff requests that the Court hold the initial review of this case in abeyance because he seeks to file an amended complaint and he is being denied access to his legal materials and needs to "learn to handle the legal research app."  Because the Court is granting Plaintiff the opportunity to file an amended complaint and a prisoner does not need access to legal research to file a fact-based complaint, the Court will also deny this motion.

## VIII.  CONCLUSION

For the foregoing reasons, the Court will enter a separate Order dismissing this action without prejudice and with leave to amend as to the conditions-of-confinement claims only. If Plaintiff chooses to file an amended complaint, he shall name and identify as Defendants the KSP officials who knew of his alleged conditions of confinement, that is – ice and frost in his cell, carbon poisoning, rodent and insect infestations, and sewage issues and explain how each Defendant was deliberately indifferent to these conditions.

The **Clerk of Court is DIRECTED** to place this case number and the word "Amended" on a § 1983 complaint form and send it to Plaintiff, along with three summons forms, should Plaintiff choose to amend the complaint.

For the reasons set forth above, **IT IS ORDERED** that Plaintiff's motions for leave to amend and to hold this action in abeyance (DNs 22 & 30) are **DENIED**.

Finally, because no claims remain against any Defendant, the **Clerk of Court** is **DIRECTED** to **terminate the remaining Defendants as parties to this action**.

Date:  April 30, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
4414.011

38